UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT RILEY                    )
                                )
            Plaintiff,          )    CIVIL ACTION NO.
                                )    12-10531-DPW
                                )
        v.                      )
                                )
METROPOLITAN LIFE               )
INSURANCE COMPANY               )
d/b/a METLIFE                   )
                                )
            Defendant.          )

MEMORANDUM AND ORDER
September 11, 2013

Apparently having been disserved by prior attorneys in
connection with this dispute, plaintiff Robert Riley belatedly
brought this action to obtain a remedy for an alleged
miscalculation of his long-term disability benefits by defendant
Metropolitan Life Insurance Company ("MetLife").

## I. BACKGROUND

### A.   *Factual Background*

The relevant facts are undisputed.  Riley was an associate
general manager for MetLife, making approximately $80,000 per
year, until he left work in February 2000 as a result of
depression and chronic pain.  Riley received short-term
disability benefits until July 2000.  In the Spring of 2001, he

returned to work in a non-managerial capacity, earning much less than he did in his managerial position.

In May 2002, Riley's chronic pain returned, and he went back on short-term disability through November 2002.  When no longer eligible for short-term disability, Riley applied for long-term disability benefits, which were approved in March 2005.

Under the long-term disability plan--an employee benefit plan governed by ERISA, 29 U.S.C. § 1001 *et seq.*--Riley was entitled to receive fifty percent of his pre-disability earnings. MetLife measured Riley's long-term disability from 2002, meaning his benefits were based on his non-managerial salary.  Riley was thus entitled to $871 per month, but the benefit was reduced to $50 per month--the minimum allowed by the plan--following an offset in the amount of Social Security benefits received by Riley.  Using Riley's managerial 2000 salary, his long-term disability benefit would have been about $3,000 per month which, after the Social Security offset, would have come to about $1,400 per month.

Riley received his first long-term disability benefits check, for $50, on April 15, 2005.  He continued to receive these checks monthly, but refused to cash them, and returned the checks to MetLife in December 2005.  Riley also communicated with MetLife through counsel in October 2005, threatening suit based on MetLife's allegedly improper determination of the period of

long-term disability and the relevant salary Riley earned at the beginning of the period of disability.

Represented by his prior counsel, Reardon & Horgan, Riley brought suit against MetLife in state court under Mass. Gen. Law ch. 93A on Feruary 7, 2007, for the alleged mishandling of his benefits.  MetLife removed the case to federal court, and the action was dismissed in November 2007 as preempted by ERISA. *Riley* v. *MetLife*, Order, No. 07-10467-RGS (D. Mass. Nov. 1, 2007).  An untimely motion for reconsideration was also denied, and the district court's judgment was affirmed on appeal.  *Riley* v. *MetLife*, Judgment, No. 08-2569 (1st Cir. Oct. 14, 2009). Reardon & Horgan, meanwhile, failed to inform Riley that the action had been dismissed, and that the post-judgment motions and appeal had been denied.

Following efforts by Riley to communicate with his counsel early in 2011--which included expressions of concern about the statute of limitations--Reardon & Horgan re-filed suit in federal court on March 18, 2011, bringing a claim under ERISA to recover unpaid benefits.  The complaint, however, did not conform to local rules, and counsel also failed to serve MetLife's designated process agent.  After Riley's counsel failed to oppose a motion to dismiss by MetLife, the action was dismissed in

January 2012.  *Riley* v. *MetLife*, Order, No. 11-10473-GAO (D.
Mass. Jan. 17, 2012).

**B.    *Procedural History***

Represented by new counsel, Riley filed this action on March
22, 2012.  The complaint included malpractice claims against his
prior counsel, but the parties have stipulated to dismissal of
those claims.  Remaining is Riley's claim under ERISA to recover
unpaid disability benefits from MetLife.  Following limited
discovery structured to address timeliness questions, on November
30, 2012, MetLife filed the motion for summary judgment before me
on the ground that this action was filed outside the applicable
statute of limitations.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 56 "mandates the entry of summary judgment,
after adequate time for discovery and upon motion, against a
party who fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on
which that party will bear the burden of proof at trial."
*Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).  The question
is whether, viewing the facts in the light most favorable to the
nonmoving party, there is a "genuine dispute as to any material
fact."  Fed. R. Civ. P. 56(a); *Casas Office Machines, Inc.* v.
*Mita Copystar Am., Inc.*, 42 F.3d 668, 684 (1st Cir. 1994).

### III. STATUTE OF LIMITATIONS

**A.   *Legal Framework***

The parties agree that ERISA does not supply a statute of limitations for Riley's claim, given that the allegations are unrelated to a breach of fiduciary duty. *Cf.* 29 U.S.C. § 1113 (setting limitation on claims for breach of fiduciary duty). Without guidance from federal law, courts borrow the limitations period for the most closely analogous state law, while applying federal common law to determine the accrual date. *Salcedo* v. *John Hancock Mut. Life Ins. Co.*, 38 F. Supp. 2d 37, 42 (D. Mass. 1998) (citing *Carreras-Rosa* v. *Alves-Cruz*, 127 F.3d 172, 174 (1st Cir. 1997)).

Both parties characterize Riley's claim as one to correct MetLife's miscalculation of his long-term disability benefits, and to recover resulting unpaid benefits.  Riley, however, does not specify which civil enforcement provision of ERISA § 502 he means to invoke. *See, e.g.*, 29 U.S.C. § 1132(a)(1)(B) (allowing plan participant "to recover benefits due to him under the terms of his plan" and "to enforce his rights under the terms of the plan"); *id.* § 1132(a)(3) (allowing plan participant to obtain "appropriate equitable relief . . . to redress" plan violations). In any event, the parties agree that Riley's claim is most closely analogous to a claim for breach of contract, and thus the six-year statute of limitations under Massachusetts law applies.

*Laurenzano* v. *Blue Cross & Blue Shield of Massachusetts, Inc. Ret. Income Trust*, 134 F. Supp. 2d 189, 207 (D. Mass. 2001).

MetLife contends that Riley's claim accrued when he knew or reasonably should have known that his benefits payment had been miscalculated. *See Novella* v. *Westchester County*, 661 F.3d 128, 147 (2d Cir. 2011) (applying federal common law); *cf. also Miller* v. *Fortis Benefits Ins*. *Co.*, 475 F.3d 516, 520 (3d Cir. 2007) (applying federal common law). Riley's communications with MetLife following the benefits determination and his refusal to cash his benefits checks establish that Riley knew of the alleged miscalculation by no later than 2005. Regardless, Riley should have known about the alleged miscalculation shortly after he started receiving benefits in April 2005, given the obvious difference between an award based on his managerial salary and one based on his non-managerial salary. Thus by the standard for accrual proposed by MetLife, there is no question that this action, filed in 2012, falls outside the six-year limitations period.

Riley responds that his claim is akin to one for breach of an installment contract, whereby each underpayment is an independent breach giving rise to a new cause of action and subject to a new statute of limitations. In many states, the statute of limitations on a claim to recover any individual installment runs from the date on which the installment was due.

-6-

*See Berezin* v. *Regency Sav. Bank*, 234 F.3d 68, 73 (1st Cir. 2000) (Lipez, J.) (applying Massachusetts law); *Pierce* v. *Metro. Life Ins. Co.*, 307 F. Supp. 2d 325, 333 (D.N.H. 2004) (applying New Hampshire law); *id.* at 330 (collecting cases from other states). Thus Riley argues he can recover for underpayments that occurred within six years of the filing of this action, even if a challenge to the initial miscalculation would not be timely.[1]

## B.   Relevant Authority

The First Circuit has not provided complete guidance as to the propriety of using an "installment contract" approach in actions to recover underpayments on an ERISA benefits plan.  In *McNamara* v. *City of Nashua*, 629 F.3d 92 (1st Cir. 2011), a City of Nashua employee brought a state-law breach of contract claim and a federal § 1983 claim, among others, against the City for having misreported certain information to the state retirement

---

[1] Riley's approach might be called a "continuing violation theory"; courts have used that term without great precision.  In circumstances similar to those presented by this case, several circuits have treated a "continuing violation" approach as synonymous with Riley's "installment contract" theory.  *Novella* v. *Westchester County*, 661 F.3d 128, 145 (2d Cir. 2011); *Miller* v. *Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 (3d Cir. 2007). However, a "continuing violation" approach might also mean that the statute of limitations is tolled until the last breach occurs.  *See, e.g.*, *Edes* v. *Verizon Communications, Inc.*, 417 F.3d 133, 139 (1st Cir. 2005); *Pisciotta* v. *Teledyne Indus., Inc.*, 91 F.3d 1326, 1332 (9th Cir. 1996).  Riley does not advocate for the latter approach.  In the interest of clarity, I will refer to Riley's theory of accrual--whereby each underpayment constitutes a fresh breach and starts a new statute of limitations--only as the "installment contract" approach.

system--resulting in underpayment of benefits. *Id.* at 94.
Although plaintiff filed suit in August 2008, reasonable
diligence would have revealed the misreporting in 2001.  *Id.* at
94, 96.  Emphasizing that the suit was against the City (which
was responsible only for the initial misreporting), and not the
retirement system (which made the continued underpayments of
benefits), the *McNamara* court found the suit barred by the
applicable three-year statute of limitations.  *Id.* at 96-97.

In dictum, however, the court noted that "conceivably if the
City had to make periodic payments to McNamara and successively
underpaid him, a claim might arise each time a payment was made
and a suit could be brought within the limitations period on any
underpayment."  *McNamara*, 629 F.3d at 96.  Needless to say, this
speculative dictum is not binding.

I do not view the dictum in *McNamara* as a straw in the wind
suggesting how the First Circuit might decide this case.  The
plaintiff in *McNamara* apparently did not even argue that the
federal standard of accrual might differ from the state standard,
*id.* at 95 ("although federal law governs the time of accrual . .
. [plaintiff] makes nothing of this"), and the court thus seemed
to work from the assumption that state law governed, *see id.* at
96 (prefacing its discussion of the "installment contract" rule
with the observation that "New Hampshire courts may not have a
case directly on point," and citing only state cases or cases in

which federal courts applied state law).  The federal rule of accrual in a claim to recover benefits under an ERISA plan, however, might differ from a state's approach to claims for breach of other insurance contracts.  Moreover, the considerations as to accrual of a § 1983 claim, sounding in tort, might differ from those applicable to an ERISA claim more closely analogous to one for breach of contract--a dynamic I discuss more fully below.  In short, the comment in *McNamara* about a "conceivable" approach was made in passing, without addressing plaintiff's unwarranted assumption that federal law regarding accrual would not produce a different result than state law, and without discussion of the relevant considerations or even citation to much of the relevant authority.

MetLife contends that *Edes* v. *Verizon Communications, Inc.*, 417 F.3d 133 (1st Cir. 2005), cuts against the dictum in *McNamara* that might support applying an "installment contract" approach. *Edes*, however, is also of limited relevance.  There, temporary workers argued that their employer interfered with their right to participate in the company's employee-benefit plan, in violation of ERISA § 510, 29 U.S.C. § 1140, by relegating them to third-party payrolls even though they functioned in all respects like regular full-time employees.  Plaintiffs argued that they incurred a new injury every time they received a paycheck from the third-party payor while still being denied benefits under the

-9-

employer's ERISA plans.  The court, however, reasoned that the "wrongful conduct, if any, involved the misclassification of Plaintiffs as off-payroll employees at their time of hire." *Edes*, 417 F.3d at 139.

A claim for violation of ERISA § 510, however, is more closely analogous to an action in tort and thus is subject to the Massachusetts three-year statute of limitations on tort actions. *Edes*, 417 F.3d at 138.  More fundamentally, the considerations underlying accrual of an action for violation of ERISA § 510 are different from those underlying a claim to recover benefits under ERISA § 502.  *See Thompson* v. *Ret. Plan for Employees of S.C. Johnson & Son, Inc.*, 651 F.3d 600, 604 n.5 (7th Cir. 2011). Although Riley's contract-like claim could not have accrued before the allegedly miscalculated benefits determination, this would not be the case if Riley's claim were one under ERISA § 510.  A claim under ERISA § 510 accrues when a plaintiff reasonably becomes aware of the interference with his rights, even if the conduct occurred "*before* the participant becomes entitled to benefits under the terms of the plan" or "before the [employer] has considered or denied a request for benefits." *Tolle* v. *Carroll Touch, Inc.*, 977 F.2d 1129, 1139 (7th Cir. 1992).  That is because ERISA § 510 "is not aimed at assuring that both sides abide by the written terms of the contract," but rather seeks to prevent employers from "interfering with the

-10-

participant's ability to collect benefits." *Id.*  Given the
different considerations at play, the court's refusal to find a
"continuing tort" in *Edes* is of limited relevance here.[2]  *Cf.*
*Henglein* v. *Colt Indus. Operating Corp.*, 260 F.3d 201, 214 (3d
Cir. 2001) (because "differing factual situations require
consideration of varying periods," limitations periods and
accrual standards from other contexts "should not be 'rotely'
applied").

Lacking binding First Circuit authority, I turn to a survey
of other sources of authority for guidance.  Although many states
apply the "installment contract" rule to claims to recover
payments on insurance policies, *see Pierce*, 307 F. Supp. 2d at
330 (collecting cases), federal circuit courts have uniformly
moved away from an "installment contract" approach to accrual
where the plaintiff seeks to correct a miscalculation and recover
unpaid benefits under an ERISA plan.

For example, in a case involving an allegedly improper
calculation of benefits under a disability pension plan, the
Second Circuit found that the statute of limitations begins to
run "when there is enough information available to the

---

[2] *Edes* does, however, explain why both parties ignore
portions of the complaint alleging that MetLife sought to
interfere with Riley's rights under the benefit plan, in
violation of ERISA § 510.  *See* Compl. ¶ 31.  To the extent Riley
continues to rely on such allegations, his claim is plainly time-
barred under *Edes*.

[beneficiary] to assure that he knows or reasonably should know of the miscalculation." *Novella*, 661 F.3d at 147.  In doing so, the court refused to view each underpayment as a fresh breach, reasoning that such an approach would make sense only "where separate violations of the same type, or character are repeated over time." *Id.* at 146 (internal quotation and citation omitted).  Rather, the Court held that miscalculation of benefits was a single, wrongful act with lasting negative effects. *Id.*

The Third Circuit, in another case involving a miscalculation of disability benefits, found that the plaintiff's claim accrued when his benefits under the plan had been "clearly repudiated." *Miller*, 475 F.3d at 520.  As relevant here, the court concluded that

> an underpayment can qualify as a repudiation because a plan's determination that a beneficiary receive less than his full entitlement is effectively a partial denial of benefits.  Like a denial, an underpayment is adverse to the beneficiary and therefore repudiates his rights under a plan.

*Id.* at 521.  The court was unwilling to encourage excessively long limitations periods--for example, in cases where benefits payments did not begin until well after the allegedly erroneous benefits determination--and thus rejected the "installment contract" approach.  *Id.* at 522; *accord Lang* v. *Aetna Life Ins. Co.*, 196 F.3d 1102, 1105 (10th Cir. 1999) (installment contract approach would give claims potentially "indefinite lifespan,"

which would "undermine the overriding purpose of a statute of limitation").

The Ninth Circuit, in a claim to recover underpaid insurance premium reimbursements, found that the statute of limitations ran from the point at which the employer initially froze reimbursements, rather than from the date of subsequent underpayments. *Pisciotta* v. *Teledyne Indus., Inc.*, 91 F.3d 1326, 1332 (9th Cir. 1996) (per curiam). The court found this approach consistent with the general federal rule of accrual: that the statute of limitations begins to run "when a plaintiff knows or has reason to know of the injury that is the basis of the action." *Id.* (internal quotation and citation omitted).[3]

---

[3] Previously, in a case involving the implementation of a pension plan amendment that unlawfully scheduled the phase-out of payment increases over several years, the Ninth Circuit had reasoned that "[e]ach check issued to [the beneficiary] in an amount reduced under the inoperative amendment constitutes a fresh breach." *Meagher* v. *Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 856 F.2d 1418, 1423 (9th Cir. 1988). However, the Ninth Circuit later limited if not effectively rejected *Meagher* in *Phillips* v. *Alaska Hotel & Rest. Employees Pension Fund*, 944 F.2d 509, 520 (9th Cir. 1991), which found that a pension fund's continued failures to relax restrictive vesting rules did not re-start the statute of limitations. In a concurring opinion in *Phillips*, Judge O'Scannlain distinguished *Meagher* on the ground that "each application of the [unlawful plan amendment at issue in *Meagher*] reduced the amount of benefits to which the plaintiff would otherwise have been entitled"; the *Phillips* plaintiffs, by contrast, "identified no series of successive, overt acts." *Id.* at 523 (O'Scannlain, J., concurring).

## C. Analysis

Given the lack of binding First Circuit authority and the weight of authority from other circuits, I decline to adopt an "installment contract" approach to the statute of limitations here.  Rather, I find that Riley had a single cause of action that accrued in 2005, when he should have known that MetLife had clearly repudiated his entitlement to a greater amount of long-term disability benefits.  *Cf. Miller*, 475 F.3d at 521.  As described in *Miller*, "repudiation by underpayment should ordinarily be made known to the beneficiary when he first receives his miscalculated benefit award" because "[a]t that point, the beneficiary should be aware that he has been underpaid and that his right to a greater award has been repudiated."  *Id.*[4]

In federal question cases, and absent a contrary directive from Congress, "a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the

_____

[4] The "clear repudiation" test produces the same result in this case as would the test proposed by MetLife and adopted by the Second Circuit.  *Cf. Novella*, 661 F.3d at 147 (calling "clear repudiation" rule a "similar reasonableness approach").  I nevertheless use the "clear repudiation" rule because it allows for consistent terminology in the point at which non-fiduciary ERISA claims will accrue--namely, upon a formal denial of benefits.  *Miller*, 475 F.3d at 521 n.3 ("We recognize that it slightly strains the word 'repudiation' to use it in the context of a benefit award, but we believe it appropriate in order to preserve consistency with cases addressing non-fiduciary claims for benefits.").  "Repudiation" is also more consistent with the point at which an analogous breach of contract claim might accrue.  *Cf.* 23 Williston on Contracts § 63:28 (4th ed. 2012) ("[A]n anticipatory repudiation is a breach of contract.").

injury that is the basis of the litigation." *Union Pac. R. Co.*
v. *Beckham*, 138 F.3d 325, 330 (8th Cir. 1998).  Here, the
repudiation by miscalculation, rather than the series of
resulting underpayments, better captures the wrong that Riley
seeks to redress.  As the Second Circuit reasoned in *Novella*, the
miscalculation was the single, discrete wrong--albeit with
lasting negative effects.  *Novella*, 661 F.3d at 147.  The point
of repudiation thus appropriately reflects when Riley had a
"complete and present action."  *See Bay Area Laundry & Dry
Cleaning Pension Trust Fund* v. *Ferbar Corp. of California*, 522
U.S. 192, 195 (1997) ("A limitations period ordinarily does not
begin to run until the plaintiff has a complete and present cause
of action." (internal citation omitted)).[5]

Moreover, the "clear repudiation" approach "balances a
[disability] plan's legitimate interest in predictability and

---

[5] The case before me might helpfully be contrasted with
*Ferbar*, which involved suit by a pension fund to collect payments
due from an employer who had withdrawn from the fund, under a
liability scheme created by the Multiemployer Pension Plan
Amendments Act ("MPPAA"), 29 U.S.C. § 1381(a).  Although there
the Court applied an "installment contract" approach, it did so
because the initial act of withdrawal imposed no liability on the
employer, *Ferbar*, 522 U.S. at 201 ("an employer does not violate
the MPPAA simply by exiting the plan"); rather, an employer only
failed to honor its obligations under the MPPAA when it failed to
pay any given installment, at which point the fund's cause of
action would accrue.  *Id.* at 202.  Unlike the act of withdrawal
in *Ferbar*, the alleged miscalculation of benefits at issue here
constitutes a wrong in itself by contravening the agreed-upon
terms of the ERISA plan; that wrong then becomes evident in
resulting underpayments.

finality with a [beneficiary's] equally legitimate interest in having a fair opportunity to challenge a miscalculation of benefits once it becomes known--or should have become known--to him." *Novella*, 661 F.3d 128 at 147; *cf. Johnson* v. *Railway Express Agency, Inc.*, 421 U.S. 454, 463-64 (1975) (limitations period "inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones").  Beneficiaries are allowed ample time to challenge miscalculations once they become aware of the adverse determination, and the plan is protected against the potentially indefinite limitations period created by the "installment contract" approach.

I recognize that Judge DiClerico in *Pierce* questioned whether the "installment contract" rule creates an indefinite limitations period because "the approach limits the insured's recovery to those individual payments as to which suit was brought before the limitations period expired."  307 F. Supp. 2d at 332.  In this sense, the "installment contract" rule makes the adverse consequences for the plaintiff resulting from his delayed filing in some measure proportional to the length of the delay. But the limitations period is nevertheless "indefinite" in regard to the passage of time between the decision setting the amount of underpayments and the commencement of litigation to challenge

that decision.  Applying the "installment contract" rule in this context thus fails to serve several basic purposes of a limitations period--namely, "to encourage rapid resolution of disputes" and to provide "repose for defendants." *Miller*, 475 F.3d at 522 (quoting *Romero* v. *Allstate Corp.*, 404 F.3d 212, 223 (3d Cir. 2005).  An unduly long limitations period also raises the concern that relevant evidence will be lost or distorted by the time of adjudication, but concerns about "stale" evidence admittedly have less force in this setting, where MetLife could easily preserve the documents necessary to compute a benefits award as long as benefits are being paid.  *Cf. D'Onofrio Const. Co.* v. *Recon Co.*, 255 F.2d 904, 908 (1st Cir. 1958) ("The function served by any statute of limitations is to give a defendant notice of the assertion of a claim against him before it has become stale, in order that the defendant may be duly warned to preserve his evidence if he wishes to contest the asserted liability.").

The "clear repudiation" approach is also consonant with the statute of limitations prescribed by ERISA for breach of fiduciary duty claims.  As relevant here, 29 U.S.C. § 1113 requires a breach of fiduciary duty claim to be brought within "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."  In *Phillips* v. *Alaska Hotel & Rest. Employees Pension Fund*, 944 F.2d 509, 520

(9th Cir. 1991), the Ninth Circuit reasoned that in cases in which a series of breaches "were of the same character," then "once a plaintiff knew of one breach, an awareness of later breaches would impart nothing materially new." As a result, allowing the statute of limitations to run from breaches other than the first "essentially reads the 'actual knowledge' standard out of the statute." *Id.* As *Phillips* reflects, breach of fiduciary duty claims are just as easily susceptible to the argument that an "installment contract" or "continuing violation" approach is appropriate.

Although Congress spoke only to fiduciary claims, section 1113 reflects background policies of ERISA that should guide a judicially-crafted federal common law as to the accrual of non-fiduciary claims. As with section 1113, my refusal to apply an "installment contract" approach to non-fiduciary claims helps to ensure that the enforcement scheme does not impose unnecessary burdens on ERISA plan providers. *Cf. Conkright* v. *Frommert*, 130 S. Ct. 1640, 1649 (2010) (Congress sought to create system that does not "unduly discourage employers from offering [ERISA] plans in the first place" due to excessive "administrative costs, or litigation expenses" (modification in original; internal quotation and citation omitted)).

Riley complains that the refusal to apply an "installment contract" approach creates an asymmetry in the ability

respectively of him and MetLife to obtain a remedy for incorrect
payments.  The benefits plan gives MetLife the right to recover
overpayments by demanding a refund from the beneficiary or by
reducing future benefits payments to offset past underpayments.
Because the plan does not include a time limitation, Riley
asserts that MetLife can recover overpayments even when it knew
of the miscalculation more than six years earlier.  Courts,
however, may well refuse to assist MetLife in belated efforts to
recover overpayments--either in a suit by MetLife to enforce a
demand, or in an action by a beneficiary seeking to challenge
untimely offsets.  MetLife also disavows its ability to engage in
belated recovery efforts.  Such cases, however, must be decided
if and when they arise.  In the meantime, the potential asymmetry
does not affect my resolution of this case.  Contractual
provisions giving MetLife broader rights to recovery of incorrect
payments than those available to Riley under the civil
enforcement provisions of ERISA may appear assymetrical, but they
do not change my analysis of the point at which Riley's claim
accrued.

Measured from MetLife's clear repudiation in 2005 of Riley's
right to a greater amount of long-term disability benefits, this
action, filed in 2012, is untimely under the applicable six-year
statute of limitations.

## IV. EQUITABLE TOLLING

I also find equitable tolling of the statute of limitations unavailable in this case.  To justify tolling, Riley must "establish that extraordinary circumstances beyond his control prevented a timely filing."  *Ortega Candelaria* v. *Orthobiologics LLC*, 661 F.3d 675, 680 (1st Cir. 2011).[6]  Such equitable relief is granted "sparingly."  *Irwin* v. *Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Riley argues that the purposes of a limitations period are not served by strict adherence to the statute of limitations where missteps by his former counsel appear to be the cause of the belated filings.  Given Riley's earlier attempts at recovery, for example, MetLife cannot claim to be "surprised" by this action.  *Cf. Order of R.R. Telegraphers* v. *Ry. Express Agency*, 321 U.S. 342, 348-49 (1944) (statutes of limitations "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared").  For similar reasons, Riley says this is not a case in which he has "slept on his rights."  *Cf. López-González* v. *Municipality of Comerío*, 404 F.3d 548, 555 (1st Cir. 2005)

---

[6] Tolling might also be appropriate if Riley were "materially misled into missing the deadline," *Ortega Candelaria* v. *Orthobiologics LLC*, 661 F.3d 675, 680 (1st Cir. 2011), but he makes no such allegation here.

(limitations periods designed to "protect defendants against the prosecution of stale claims and to protect the courts from having to decide the merits of such claims when the plaintiff has slept on his rights" (internal quotation and citation omitted)).  To the contrary, Riley says he has diligently pursued recovery for the alleged underpayments since the initial miscalculation.  This suit is only untimely because his previous counsel failed to keep him abreast of developments in his preempted state court action, and then allowed his timely-filed federal court action to falter on procedural grounds.

To the extent Riley seeks equitable tolling based on substandard professional care by his previous counsel, it is clear that "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect."  *Irwin*, 498 U.S. at 96; *see also Gayle* v. *United Parcel Serv., Inc.*, 401 F.3d 222, 227 (4th Cir. 2005) (finding that "attorney negligence--including allowing a client's case to fall through the cracks" does not present an "extraordinary circumstance" justifying equitable tolling).  Riley's allegations about the behavior of his prior counsel are troubling, but do not present the extraordinary circumstances that might justify equitable tolling against MetLife.  This is especially so given that, once Riley escalated his efforts to communicate with counsel in early 2011, a new complaint was filed in federal court

by March of that year.  *Compare Holland* v. *Florida*, 130 S. Ct.
2549, 2564 (2010) (finding more than "garden variety neglect"
when attorney failed to communicate with client over a period of
years, and despite frequent attempts at communication by client).

Riley also argues that, even attributing all of counsel's
actions to him, the earlier attempts at recovery are sufficient
to toll the statute of limitations.  Riley compares this case to
*Burnett* v. *New York Cent. R. Co.*, 380 U.S. 424 (1965), where
plaintiff brought a claim under the Federal Employers' Liability
Act in state court shortly before the expiration of the
limitations period, but the claim was dismissed for improper
venue; after plaintiff re-filed in federal court, the Court found
the action timely even though it was filed shortly after the
limitations period had run.  *Id.* at 434-35.  *Burnett*, however,
was primarily concerned with preventing lack of uniformity
between FELA claims filed in states that would allow for transfer
after a filing is made in an improper venue (where the action
would remain timely following transfer), as opposed to states
where re-filing would be required.  *Id.* at 433-34.  Such concerns
about uniformity are absent here, however, because ERISA does not
even prescribe a statute of limitations for claims to recover
unpaid benefits.  Moreover, Riley had ample time in which to
bring his claim to recover benefits, and to correct

-22-

failings--both substantive and procedural--in his submissions to the court.

As a general proposition, the interests of justice do not weigh heavily in favor of Riley, given that he still has a remedy--albeit not one against MetLife.  Rather, under these circumstances, a litigant in Riley's position can more appropriately seek remedy in a suit for malpractice against his prior counsel.  Allowing the suit against MetLife as a matter of equitable discretion, by contrast, would "visit[] the sins of plaintiff's lawyer upon the defendant," which I decline to do. *Damiani* v. *Rhode Island Hosp.*, 704 F.2d 12, 17 (1st Cir. 1983) (citing *Link* v. *Wabash R. Co.*, 370 U.S. 626, 634 n.10 (1962)).[7]

## V. CONCLUSION

For the reasons set forth more fully above, defendant's motion for summary judgment is GRANTED.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

[7] I recognize Riley has already settled the malpractice claims against his previous attorneys.  The details of that settlement are unknown to me, and in any event would not affect my disposition of this motion generally or the interest of justice analysis in particular.

-23-